Ronald S. Hodges – Bar No. 150586
Rika M. Kido – Bar No. 273780
**SHULMAN HODGES & BASTIAN LLP**
100 Spectrum Center Drive, Suite 600
Irvine, California 92618
Telephone: (949) 340-3400
Facsimile: (949) 340-3000
Email: rhodges@shbllp.com
           rkido@shbllp.com

Attorneys for Creditor, Elizabeth A. Miles

# UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA, SACRAMENTO DIVISION

| | |
|---|---|
| In re | Case No. 16-24304-A-7 |
| **CHRISTOPHER LYNN JOHNSON,** | Chapter 7 |
|            Debtor. | Adv. Case No.: |
| | **COMPLAINT TO DETERMINE NON-DISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. § 523** |
| **ELIZABETH A. MILES,** | |
|            **Plaintiff,** | |
|        **v.** | |
| **CHRISTOPHER LYNN JOHNSON,** | |
|            **Defendant.** | |

**SHULMAN HODGES & BASTIAN LLP**
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

Z:\I-J\Johnson, Christopher\Adv\Pld\Complaint.doc
5183-000/11

Elizabeth A. Miles ("Plaintiff"), creditor and party in interest in the bankruptcy case of Christopher Lynn Johnson ("Debtor"), hereby brings this Complaint against the Debtor and respectfully complains and alleges as follows:

## STATEMENT OF JURISDICTION AND VENUE

1. This is an action to determine the dischargeability of certain debts pursuant to 11 U.S.C. §§ 523(a)(2), 523(a)(4) and 523(a)(6).

2. Plaintiff is a creditor of the Debtor and as such, has standing to bring this Complaint.

3. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§157 and 1334 in that this action arises in and relates to the Debtor's bankruptcy pending in the United States Bankruptcy Court for the Eastern District of California, Sacramento Division entitled *In re Christopher Lynn Johnson,* Case No. 16-24304-A-7 on the docket of the Court filed on June 30, 2016 ("Petition Date").

4. This action is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(J) (determinations as to the dischargeability of particular debts). To the extent any related claims are determined not to be a core proceeding, the Plaintiff consents to an entry of final judgment and orders by the Bankruptcy Court.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1409(a), as this adversary proceeding arises under Title 11 or arises under or relates to a case under Title 11 which is pending in this District and does not involve a consumer debt less than $18,675.00.

## PARTIES

6. Plaintiff, Elizabeth A. Miles, is a creditor of the Debtor and an individual residing in the County of Orange, State of California.

7. Defendant, the Debtor, is an individual residing in the County of El Dorado, State of California, and has filed for bankruptcy protection under Title 7 in the underlying case.

///

///

///

SHULMAN HODGES & BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

2

Z:\I-J\Johnson, Christopher\Adv\Pld\Complaint.doc
5183-000/11

**GENERAL ALLEGATIONS**

8.  Plaintiff and Debtor have engaged in multiple business transactions over the course of several years, including the purchase of real properties, remodel of those real properties and the sale of those real properties for a profit.

9.  In or around Spring of 2014, Debtor informed Plaintiff that his friend, Chris LaBarbera ("LaBarbera"), was familiar with these types of transactions and together, would like to engage in these transactions in Arizona.

10. Plaintiff, Debtor and LaBarbera (the "Parties") arranged to meet in Arizona to discuss the details of purchasing remodeling and selling those real properties in Arizona.

11. At the meeting, the Parties discussed the purchase, remodel and eventual sale of three (3) properties in Arizona. Debtor and LaBarbera represented to Plaintiff that if she would provide the funds for the remodel of the three (3) Arizona real properties, Defendant and LaBarbera would handle the remodeling and later, the listing and sale of the real properties.

12. At the meeting, Debtor and LaBarbera assured Plaintiff that, because she would be funding the remodel, she would receive her funds first from the proceeds of the sale of the three (3) properties.

13. Debtor and LaBarbera also assured Plaintiff that she would be paid back regardless of whether there were enough funds from the sale proceeds to reimburse her for the money she provided for the remodeling.

14. Plaintiff was informed that she would be the only investor in this transaction.

15. Plaintiff agreed to the above terms (i.e. that she would provide the funds to remodel three (3) real properties in Arizona, Debtor and LaBarbera would handle the remodeling and have the real properties listed and sold, and she would be paid back first from the sale proceeds of the real properties).

///
///
///

SHULMAN HODGES & BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

3

Z:\I-J\Johnson, Christopher\Adv\Pld\Complaint.doc
5183-000/11

16. Debtor and LaBarbera purchased the following three (3) real properties: (1) 3630 N. 58th Way, Phoenix, AZ 85018 (the "58th Property"); (2) 1536 W. Port Au Prince Lane, Phoenix, AZ 85023 (the "Port Au Prince Property"); and (3) 8334 E. Sands Drive, Scottsdale, AZ 85255 (the "Sands Property," together with the 58th Property and the Port Au Prince Property, the "Arizona Properties").

17. Title in the Arizona Properties was vested in the Debtor and LaBarbera, as tenants-in-common.

18. In reliance on the representations made by Debtor and LaBarbera, on or about August 19, 2014, $200,000.00 was deposited via wire transfer from the Plaintiff's account to the Debtor's account. The Parties agreed that Plaintiff would loan Debtor the total amount of $200,000.00, with interest thereon at the rate of fifteen percent (15%) per annum and monthly payments to Plaintiff of $2,500.00.

19. Plaintiff received four (4) monthly payments of $2,500.00 on September 26, 2014, October 25, 2014, November 25, 2014 and January 2, 2015, respectively.

20. In January 2015, Debtor requested additional funds for the remodel of the Arizona Properties.

21. On January 8, 2015, Plaintiff entered into a Promissory Note with Debtor ("Promissory Note") to reflect the total amount of funds loaned to the Debtor to date. Pursuant to the Promissory Note, Plaintiff loaned Debtor the total sum of $370,000.00.

22. On or about January 8, 2015, $170,000.00 was deposited via wire transfer from the Plaintiff's account to the Debtor's account.

23. Pursuant to the Promissory Note, Plaintiff agreed to loan Debtor the total sum of $370,000.00, with interest thereon at the rate of fifteen percent (15%) per annum commencing January 20, 2015 and monthly interest only payments in the amount of $3,208.00.

24. Plaintiff received the following five (5) monthly payments from the Debtor totaling $16,208.00: (1) $3,208.00 on January 23, 2015; (2) $4,000.00 on February 17, 2015; (3) $3,000.00 on April 1, 2015; (4) $3,000.00 on May 1, 2015; and (5) $3,000.00 on May 25, 2015.

///

SHULMAN HODGES & BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

4

Z:\I-J\Johnson, Christopher\Adv\Pld\Complaint.doc
5183-000/11

25. Debtor failed to make any payments on the Promissory Note after May 25, 2015.

26. Despite her agreement with the Debtor and LaBarbera, Plaintiff was not kept informed regarding the status of the remodels of the Arizona Properties.

27. In or around July 2015, Debtor informed Plaintiff and LaBarbera that he did not want to continue to pursue the remodeling of the Arizona Properties.

28. LaBarbera asked Plaintiff to pay half the outstanding expenses for the Arizona Properties. Plaintiff informed Debtor and LaBarbera that she would not do so unless the Arizona Properties were transferred to her on account of the funds owed to her under the Promissory Note. Debtor refused on the grounds that he intended to file for bankruptcy protection.

29. Despite Debtor and LaBarbera's representations, Plaintiff was informed that she would not be paid back first from the sale proceeds.

30. Plaintiff is informed and believes that Debtor and LaBarbera refinanced one (1) or more of the Arizona Properties.

31. Plaintiff is informed and believes that Debtor took over $160,000.00 out of the Arizona Properties' project or directly from monies received from it for his personal use.

32. On September 9, 2015, Plaintiff filed a Complaint against Debtor and LaBarbera in the Superior Court of the State of Arizona, County of Maricopa, commencing Case No. CV2015-095179 ("Arizona Action").

33. On September 10, 2015, Plaintiff recorded Notices of Lis Pendens against the Arizona Properties.

34. Two (2) of the Arizona Properties went into escrow the same week the Notices of Lis Pendens were filed against the Arizona Properties.

35. Plaintiff and Debtor agreed to resolve the Arizona Action if Debtor sent three (3) separate demand letters to escrow stating Debtor's share of the proceeds from the sales of the Arizona Properties would be paid directly to Plaintiff. However, Debtor had the proceeds from the sales of the Arizona Properties sent directly to him and he then wired the proceeds to Plaintiff.

///

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

5

Z:\I-J\Johnson, Christopher\Adv\Pld\Complaint.doc
5183-000/11

36. Plaintiff received a total of $138,833.90 from the sale of the 58th Property and Port Au Prince Property as follows: $87,943.33 on September 25, 2015 and $50,890.53 on October 1, 2015.

37. For the first two (2) Arizona Properties, Debtor wired the total sale proceeds he received to Plaintiff. However, for the sale of the Sands Property, Debtor refused to turn over the sale proceeds to Plaintiff unless she agreed to finance the remodeling of another real property with Debtor and further agreed to split the proceeds three (3) ways: Plaintiff, Debtor and Debtor's aunt, Cindy Kester ("Ms. Kester"). Debtor informed Plaintiff that, contrary to representations that there were no other investors, his aunt had invested $200,000.00 in the Arizona Properties' project. Plaintiff refused Debtor's demands and he finally sent her $75,000.00 from the sale proceeds.

38. Plaintiff is informed and believes that $75,000.00 is not the full amount Debtor received from the sale proceeds from the sale of the Sands Project.

39. As of December 11, 2015, $171,398.39 remains due and owing on the Promissory Note with interest thereon at fifteen percent (15%) per annum.

40. The Debtor filed a Voluntary Petition for relief under Chapter 7 of the Bankruptcy Code on June 30, 2016.

41. On his Schedule F, the Debtor listed the Plaintiff as one of his unsecured creditors with a debt totaling $150,000.00 based on a promissory note.

42. On his Schedule F, the Debtor lists Ms. Kester as one of his unsecured creditors with a debt totaling $400,000.00 based on a promissory note.

43. At his initial 341(a) Meeting of Creditors on August 9, 2016, the Debtor testified under oath that he borrowed funds from Ms. Kester for investments in real estate (including travel and other expenses) and used some of the funds he borrowed from Ms. Kester to pay Plaintiff.

44. At his second Section 341(a) Meeting of Creditors held on September 20, 2016 ("Second MOC"), the Debtor testified under oath that he used funds from Plaintiff, Ms. Kester and LaBarbera to purchase the Arizona Properties.

SHULMAN HODGES & BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

Z:\I-J\Johnson, Christopher\Adv\Pld\Complaint.doc
5183-000/11

45. At his Second MOC, the Debtor testified under oath that he was a real estate investor and that it was his practice to borrow monies from certain individuals, invest in real estate and pay them back a certain return. However, the Debtor then testified under oath that he has no accounting records (e.g. QuickBooks, financial ledgers, etc.) or documentation which accounts for the money he received from his investors or paid out to his investors.

46. At his Second MOC, the Debtor testified that prior to the sale of the Arizona Properties, there was a refinance through which he personally received funds.

## FIRST CLAIM FOR RELIEF
## [11 U.S.C. §523(a)(2)]

47. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 46 and incorporates them in this Paragraph by reference.

48. By reason of the foregoing, the Debtor made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading which operated as a fraud and deceit upon Plaintiff. Namely, the Debtor represented to Plaintiff that, in exchange for providing the funds for the remodeling of the Arizona Properties, she would be paid back the funds she loaned to Debtor <u>first</u> from the sale proceeds of the Arizona Properties, before either Debtor or LaBarbera received any money from the sale proceeds. Further, Debtor represented to Plaintiff that if she provided funds for the remodeling of the Arizona Properties, she would be paid back regardless of whether there was enough money from the sale proceeds to reimburse her for the funds she provided. Debtor never had any intention of paying Plaintiff back in full as provided in the Promissory Note, let alone paying her <u>first</u> through the sale of the Arizona Properties. Debtor entered into the Promissory Note with Plaintiff with no intention of complying with the terms of the Promissory Note.

49. The Debtor had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that he failed to ascertain and to disclose such facts, even though such facts were available to him. The Debtor's material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing the truth.

7

SHULMAN HODGES & BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

Z:\I-J\Johnson, Christopher\Adv\Pld\Complaint.doc
5183-000/11

50. As a direct and proximate result of the dissemination of the materially false and misleading information and the failure to disclose material facts, as set forth above, Plaintiff has suffered damages in an amount to be determined at trial.

51. Plaintiff was ignorant of the falsity of the misrepresentations and omissions when they were made. Had Plaintiff known the truth that Debtor did not intend to pay her back as provided for in the Promissory Note, let alone pay the Debtor back first from the sale proceeds of the Arizona Properties, Plaintiff would not have entered into the Promissory Note with the Debtor.

52. The Debtor engaged in the conduct as alleged herein for the purpose of defrauding and deceiving the Plaintiff by taking advantage of the relationship of trust and confidence.

53. Based on the foregoing, the amount due to the Plaintiff is nondischargeable under section 523(a)(2)(A) of the Bankruptcy Code because such debt was incurred by Defendant through fraud in an amount to be determined at trial but at least the sum of $171,398.39, with interest thereon at fifteen percent (15%) per annum from December 11, 2015.

## SECOND CLAIM FOR RELIEF

### [11 U.S.C. § 523(a)(4)]

54. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 53 and incorporates them in this Paragraph by reference.

55. When Plaintiff transferred the funds to Debtor on or about August 19, 2014 and on or about January 8, 2015, an express trust was created by virtue of the Parties' agreement. Debtor was required to hold the funds in trust for Plaintiff's benefit. The only purpose for which Debtor was permitted to use the funds was for remodeling of the Arizona Properties.

56. Debtor was acting as a fiduciary to Plaintiff at the time Debtor received the two (2) wire transfers in August 2014 and January 2015.

57. While acting in a fiduciary capacity, Debtor failed to account for the funds entrusted to him by Plaintiff and Debtor failed to pay back Plaintiff for monies owed.

///

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

8

Z:\I-J\Johnson, Christopher\Adv\Pld\Complaint.doc
5183-000/11

58. While acting in a fiduciary capacity, Debtor used the funds received from Plaintiff for purposes other than for which the funds were providing, including the purchase of the Arizona Properties.

59. While acting in a fiduciary capacity, Debtor refinanced one or more of the Arizona Properties, without advising Plaintiff, and he personally received funds from the refinance(s).

60. Debtor knew that he was not permitted to use the funds received from Plaintiff for any purpose other than to remodel the Arizona Properties so that Plaintiff could be paid through the sale of the Arizona Properties.

61. Based on the foregoing, the amounts due to the Plaintiff in an amount to be determined at trial are nondischargeable under section 523(a)(4) of the Bankruptcy Code.

## THIRD CLAIM FOR RELIEF
## [11 U.S.C. 523§ (a)(6)]

62. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 61 and incorporates them in this Paragraph by reference.

63. Debtor willfully and maliciously injured Plaintiff.

64. Debtor's misrepresentations to Plaintiff that if she provided money for the remodeling of the Arizona Properties, then she would be paid back regardless of whether there was enough money from the sale proceeds to reimburse her, when he did not intend to do so, was a wrongful act.

65. Debtor's aforementioned misrepresentations were done intentionally.

66. Debtor knew that failing to comply with the terms of the Promissory Note would harm Plaintiff.

67. Misrepresentations made by Debtor were made with the knowledge that harm to Plaintiff was likely to result.

68. Debtor's actions and misrepresentations were done without just cause or excuse.

69. Based on the foregoing, the amounts due to the Plaintiff in an amount to be determined at trial are nondischargeable under section 523(a)(6) of the Bankruptcy Code.

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

Z:\I-J\Johnson, Christopher\Adv\Pld\Complaint.doc
5183-000/11

# PRAYER

**WHEREFORE**, Plaintiff prays for relief as follows:

1. For judgment in favor of the Plaintiff and against the Debtor determining and awarding damages resulting from the conduct of the Debtor in an amount to be determined at trial but at least the sum of $171,398.39, with interest thereon at fifteen percent (15%) per annum from December 11, 2015, and attorneys' fees and reasonable costs;

2. For an order and judgment that finds and determines that such debt owed by Debtor to Plaintiff is nondischargeable;

3. For costs of suit incurred;

4. For punitive damages to the extent permissible under applicable law; and

5. For such other and further relief as is just and proper.

**SHULMAN HODGES & BASTIAN LLP**

Dated: January 24, 2017    /s/ Rika M. Kido
Ronald S. Hodges
Rika M. Kido
Counsel for Plaintiff, Elizabeth A. Miles

SHULMAN HODGES & BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

10

Z:\I-J\Johnson, Christopher\Adv\Pld\Complaint.doc
5183-000/11